UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Katie L. Whalen,

    Plaintiff,

  v.　　　　　　　　　　　　　　　　　　　　　18-CV-29 (JLS)

Nancy Ann Berryhill,
Acting Commissioner of Social Security,

    Defendant.

## **DECISION AND ORDER**

Plaintiff Katie L. Whalen brought this action under the Social Security Act, seeking review of the determination by the Commissioner of Social Security that she was not disabled. Dkt. 1. Whalen moved for judgment on the pleadings. Dkt. 8. The Commissioner then responded and cross-moved for judgment on the pleadings. Dkt. 11. Whalen replied. Dkt. 13.

For the reasons stated below, the Court grants Whalen's motion and denies the Commissioner's cross-motion.

## **PROCEDURAL HISTORY**

On January 24, 2014, Whalen applied for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI").[1] Dkt. 5, at 130.[2] She claimed that she had been disabled since December 1, 2013, due to fibromyalgia, congenital hydrocephalus with shunt replacement, migraines, vision loss, and biliary dyskinesia. *See, e.g.*, Tr. 132, 136-38, 272.

On May 1, 2014, Whalen received notice that her application was denied because she was not disabled under the Social Security Act. *Id.* at 152. She requested a hearing before an administrative law judge ("ALJ") (*id.* at 160), which occurred on June 3, 2016 (*id.* at 33). The ALJ then issued a decision on September 26, 2016, confirming the finding that Whalen was not disabled. *Id.* at 11. Whalen appealed the ALJ's decision, but her appeal was denied, and the Commissioner's decision became final. *Id.* at 1-6. She then commenced this action. Dkt. 1.

---

[1] One category of persons eligible for DIB includes any adult with a disability who, based on his quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *see also Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R §§ 404.1520(a)(2) (concerning DIB); 416.920(a)(2) (concerning SSI).

[2] Dkt. 7 is the transcript of proceedings before the Social Security Administration. All further references are denoted "Tr. _."

## LEGAL STANDARDS

### I. District Court Review

The scope of review of a disability determination involves two levels of inquiry. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the Court must "decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* The Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes" of the Social Security Act. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Second, the Court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citation omitted). The Court does not "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotations and citation omitted). But "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Indeed, if there is "a reasonable basis for doubt whether the ALJ applied correct legal principles," applying the substantial evidence standard to uphold a finding that the claimant was not disabled "creates an unacceptable risk that a claimant will be deprived of

the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## II. <u>Disability Determination</u>

ALJs follow a five-step evaluation process to determine if a claimant is disabled. *See* 20 C.F.R. § 404.1520 (a)(1). At the first step, the ALJ determines whether the claimant currently is engaged in substantial gainful employment. *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. *Id.* § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant suffers from any severe impairments. *Id.* § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. *Id.* § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals an impairment listed in the regulations and meets the duration requirement, the claimant is disabled. *Id.* §§ 404.1520(a)(4)(iii), (d).

But if the ALJ finds that no severe impairment or combination of impairments meets or equals an impairment in the regulations, the ALJ proceeds to calculate the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1520(a)(4)(iv), (e). The RFC is a holistic assessment that addresses the

claimant's medical impairments—both severe and non-severe—and evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for her collective impairments. *See id.* §§ 404.1520(e), 404.1545.

The ALJ then proceeds to step four and determines, using the claimant's RFC, whether the claimant can perform past relevant work. *Id.* §§ 404.1520(a)(4)(iv), (e). If the claimant can perform past relevant work, she is not disabled, and the analysis ends. *Id.* §§ 404.1520(a)(4)(iv), (f). But if the claimant cannot, the ALJ proceeds to step five. *Id.* §§ 404.1520(a), (f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), (g). Specifically, the Commissioner must prove that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotations and citation omitted).

## **DISCUSSION**

Whalen claims five errors with the Commissioner's conclusion that she is not disabled. First, she argues that the ALJ's RFC finding that she could "frequently" read in 18-point font or greater was not supported by substantial evidence. Dkt. 8-1, at 13-15. Second, Whalen argues that the ALJ improperly concluded at step four that she could perform her past relevant work as a Front Desk Clerk/Agent. *Id.* at

5

15-17. Third, Whalen argues that the vocational expert's testimony did not constitute substantial evidence upon which to base the ALJ's findings at steps four and five of the evaluation process, and that the ALJ failed to elicit testimony from the vocational expert regarding the conflict between his testimony and the information contained in the Directory of Occupational Titles. *Id.* at 17-22. Fourth, Whalen argues that the ALJ incorrectly found that she could perform work activities on a regular and continuing basis. *Id.* at 22-24. And fifth, Whalen argues that the ALJ's finding that she could perform light work was unsupported by the record. *Id.* at 24-26.

I.   **The ALJ erred in finding that Whalen could "frequently" read 18-point font or greater.**

The ALJ found that Whalen "has the residual functional capacity to . . . frequently read computer screens, books or newspaper print 18 point font or greater." Tr. 15. Whalen argues that this finding is unsupported by substantial evidence. The Court agrees.

A very specific RFC assessment—such as the amount of time a claimant can spend on certain activities—must be based on evidence in the record, not on "the ALJ's own surmise." *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order); *see also Mariani v. Colvin*, 567 F. App'x 8, 10 (2d Cir. 2014) (summary order) (vacating and remanding where the RFC finding that plaintiff could perform manipulation/fingering 50% of the time during a work day was not supported by substantial evidence).

6

Here, the ALJ's finding that Whalen can read "frequently" in 18-point font contradicts both Whalen's direct testimony and Dr. Theodore Prawak's March 2014 medical opinion, to which the ALJ afforded "significant weight." Tr. 15, 17. With respect to her vision, Whalen testified it "[s]eems like things are moving . . . and zeroing in [and] focusing is very difficult." *Id.* at 44-45. To read, she requires "things blown up . . . very, very big"—usually, in 18-point font. *Id.* at 44. When the text is directly in front of her, with large type, she testified she could probably withstand five minutes of reading. *Id.* at 45. She testified, too, that at the onset of headaches and dizziness caused from such reading, she needs a half-hour break to refocus. *Id.*; *see also id.* at 52-53 (testifying that her vision causes problems with balancing and walking in a straight line, which has resulted in her walking into walls).

In assessing Whalen's vision, the ALJ gave "significant weight" to the March 25, 2014 opinion of Dr. Prawak. *Id.* at 17. Dr. Prawak summarized that Whalen's "vision is not good enough to drive a motor vehicle, operate machinery, or climb[] heights. Prolonged reading should be curtailed." *Id.* at 543. The ALJ "afford[ed] significant weight" to Dr. Prawak's opinion that Whalen was unable to drive, operate machinery, or climb heights, *see id.* at 17 (finding that such an opinion was "consistent with the medical evidence of record"), but ignored that "[p]rolonged reading should be curtailed." Without any explanation, the ALJ found to the contrary—that Whalen can read "frequently." *Id.* at 15. This limitation "not only is absent from the record, it actually contradicts the opinion of a medical provider."

7

*Heckman v. Comm'r of Soc. Sec.*, 6:18-cv-06032-LJV, 2019 WL 1492868, at *4 (W.D.N.Y. Apr. 4, 2019).

"[I]t is a fundamental tenet of Social Security law than an ALJ cannot pick and choose only part of a medical opinion that support his determination." *Caternolo v. Astrue*, No. 6:11-CV-6601 (MAT), 2013 WL 1819264, at *9 (W.D.N.Y. Apr. 29, 2013) (internal citations omitted) (collecting cases). "[I]n weighing evidence, the ALJ cannot arrive at specific limitations that do not appear anywhere in that evidence." *Heckman*, 2019 WL 1492868, at *4; *see also McBrayer v. Sec'y. of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion."). Without "some explanation" from the ALJ "as to the tether between [the] RFC and the non-stale medical opinions or statements from plaintiff, the RFC appears to be based upon [the ALJ's] lay analysis of plaintiff's limitations, which is not permitted and requires remand." *Jordan v. Berryhill*, 1:17-CV-00509(JJM), 2018 WL 5993366, at *3 (W.D.N.Y. Nov. 15, 2018).

The Court is not persuaded by the Commissioner's argument that either Whalen's bachelor's degree in hospitality management or "hobbies," including "watching movies and television, reading, and using a computer to email and engage in social networking," support the ALJ's finding that Whalen can read "frequently" in 18-point font. Dkt. 11-1, at 15, 18. There is nothing inherent in these activities that proves Whalen can read "frequently" in 18-point font. *See also* Tr. 62-63 (Whalen testifying that she has her laptop screen "blown up so that [she]

can see it"). That Whalen earned a bachelor's degree in 2005 (*id.* at 42-43) does not bear on whether Whalen has been able to read since her alleged disability beginning December 1, 2013, or her capacity to read today. Further, Whalen "should not be penalized for attempting to lead [a] normal [life] in the face of [her] limitations." *Harris v. Colvin*, 149 F. Supp. 3d 435, 446 (W.D.N.Y. 2016) (citations omitted).

The finding that Whalen can read "frequently" in 18-point font is not harmless. At the hearing, in response to a series of hypothetical questions, the vocational expert testified that an individual who had certain limitations—such as the inability to climb ladders, work on a conveyor belt or assembly line, and work in an environment with more than a moderate noise level—but who could "frequently" read computer screens, book, or newspaper print at an 18-point font or greater would be able to work as a Front Desk Clerk/Agent. Tr. 72-73. According to the vocational expert, however, an individual who is similarly situated, but who could only "occasionally" read in 18-point font, would be "preclude[d]" from such work. *Id.* at 73.

If Whalen can, in fact, read "frequently" in 18-point font, "these determinations must come from medical evidence or opinions in the record, not the ALJ's 'own surmise.'" *Heckman*, 2019 WL 1492868, at *4 (citing *Cosnyka*, 576 F. App'x. at 46). Thus, the case is remanded "so that the ALJ can reconsider these specific limits in his RFC determination or develop the record by recontacting [Whalen's] physicians to obtain evidence supporting these specific limitations," including Dr. Prawak, who has already found that Whalen should avoid "prolonged

9

reading." *Id.*; *see also* Tr. 543; *Mariani*, 567 F. App'x at 10 (remanding where the record provided "no evidence for the ALJ's specific finding that [plaintiff] could use his dominant right hand for fifty percent of the workday").

II.     **The ALJ improperly concluded that Whalen could perform her past relevant work as she performed it or as it is performed in the national economy.**

At step four of the evaluation process, the ALJ found that Whalen could perform her past work as a Front Desk Clerk/Agent. Tr. 19. This was error for two reasons. First, as discussed above, the ALJ's finding that Whalen can "frequently" read 18-point font was unsubstantiated. Had the ALJ found that Whalen can only "occasionally" read 18-point font, she would be precluded from returning to her past work as a Front Desk Clerk/Agent. *Id.* at 72-73. Indeed, such a finding may be supported by Dr. Prawak's medical opinion that Whalen should avoid "[p]rolonged reading." *See id.* at 61-62 (Whalen, testifying she needed help checking guests into the hotel because of her vision issues); *id.* at 77-78 (vocational expert, testifying that a Front Desk Clerk/Agent must be "able to see details at close range within a few feet of the computer").

Second, the ALJ "erred by concluding that plaintiff could perform [her] past relevant work . . . without making specific findings as to the physical and mental demands of that work." *Steficek v. Barnhart*, 462 F. Supp. 2d 415, 421 (W.D.N.Y. 2006); *compare id.* (finding the ALJ's statement that plaintiff's past work "required no heavy lifting and was performed primary in the seated position . . ." insufficiently specific as to the demands of the work), *with* Tr. 19 (describing the

10

Front Desk Clerk/Agent position only as "a 'light' semi-skilled job with a specific vocational preparation or SVP rating of four").

III. **The ALJ failed to elicit testimony from the vocational expert regarding conflicts between his testimony and the Directory of Occupational Titles.**

The ALJ found, based upon the testimony of the vocational expert, that Whalen could work as an "Assembler Small Products[;] DOT job code of 706.684-022," "Hand Packager; job code of 222.687022," or as a "Ticket Taker; DOT job code of 344.667-010." Tr. 20. Whether Whalen can act as a Ticket Taker must be decided on remand in light of the ALJ's unsubstantiated finding that she can "frequently" read 18-point font.[3] *See, e.g.*, DICOT 344.667-010 (G.P.O.), 1991 WL 672863 (requiring that a Ticket Taker perform "frequently" with near acuity, or from one-third to two-thirds of the time).

The findings that Whalen could act as an Assembler and Hand Packager are incompatible with certain of the ALJ's RFC determinations and the DOT. The former has a noise level of "Level 4 – Loud" and requires performance of "repetitive tasks on assembly line." DICOT 706.684-022 (G.P.O.), 1991 WL 679050. These characteristics conflict with the ALJ's RFC findings—namely, that Whalen "cannot work in an environment with more than a moderate noise level" and "cannot

---

[3] The exchange on the record regarding color-coded admission tickets is more speculative than substantial. Tr. 73-76. As such, it does not provide substantial evidence for a contrary conclusion. *See also id.* at 80-81 (vocational expert, testifying that, regardless of the point font, "[i]f they cannot visually acuity focus and concentrate, they will not be able to . . ." perform the occupations he provided to the ALJ); *id.* at 136 (finding loss of central visual acuity "severe").

11

complete work that involves a conveyor belt or an assembly line." Tr. 15. The Court rejects as speculation the Commissioner's argument that "the ALJ and vocational expert would have known" that "not all assembly jobs are at [a loud noise] level." Dkt. 11-1, at 23. In addition, because the ALJ categorically found that Whalen "cannot complete work that involves . . . an assembly line," the Court is not persuaded that Whalen can perform this task despite the possibility that she could be "assigned to different work stations . . . to reduce fatigue." *Id.* (citing DICOT 706.684-022); *see also* Tr. 15.

The ALJ's finding, based upon the vocational expert's testimony, that Whalen could act as a Hand Packager is also incompatible with the DOT. A Hand Packager "[s]tarts, stops, and regulates" the speed of a conveyor belt, in a "loud" noise level, and performed at the medium exertional level. These characteristics contradict the ALJ's RFC findings that Whalen can perform "light work," cannot complete work that involves a conveyor belt, and cannot work in an environment with more than a moderate noise level. Tr. 15.

When testifying that Whalen could act as a Hand Packager, however, the vocational expert provided the ALJ with the DOT code for a Routing Clerk. *Id.* at 73-74. *See* DICOT 222.687-022 (G.P.O.), 1991 WL 672133. Nonetheless, even assuming that the vocational expert "misspoke when he referred to 'hand packager' rather than 'routing clerk,'" *see* Dkt. 11-1, at 21, the Court agrees with Whalen that "the record lacks testimony from [the vocational expert] that this occupation could be performed with the limitations given by the ALJ." Dkt. 8-1, at 20. A Routing

Clerk "[r]eads delivery or route numbers marked on articles or delivery slips, or determines locations of addresses indicated on delivery ships, using charts." In addition, a Routing Clerk "[m]ay be designated according to work station as Conveyor Belt Package Sorter." *See* DICOT 222.687-022 (G.P.O.). The vocational expert did not opine on whether this job could be performed by an individual who, like Whalen, reads in 18-point font. *See also* Tr. 80-81 (an individual who "cannot visually acuity focus and concentrate," regardless of the size font, will be unable to perform the occupations provided by the vocational expert); *id.* at 136 (finding Whalen's loss of central visual acuity "severe"). In addition, the ALJ did not elicit testimony as to whether Whalen can perform this job despite her being unable to do work involving a conveyor belt, or whether that limitation would affect the number of Routing Clerk positions in the national economy.

### IV. Substantial evidence supports a finding that Whalen cannot perform work activities on a regular and continuing basis.

Whalen argues that the ALJ erred in finding that Whalen could perform work as a Front Desk Clerk/Agent, Assembler Small Parts, Hand Packager (or Routing Clerk), and Ticket Taker on a sustained basis, as such a finding is unsupported by substantial evidence of record. The Court agrees.

The evidence does not support a finding that Whalen can perform sustained work activities on a "regular and continuing basis"—meaning, 8 hours a day, for 5 days a week, or an equivalent work schedule. *See* Social Security Ruling 96-8p. Substantial evidence shows that Whalen's hydrocephalus and fibromyalgia and corresponding migraines, vision and subsequent balance issues, and fatigue would

impact her ability to maintain attendance and productivity in the workplace. *See, e.g.*, Tr. 46-47 (headaches require her to rest and impair her ability to "function," including her ability to look at a screen); *id.* at 48-49 (vision issues cause her to trip, lose her balance, and walk into walls); *id.* at 50-51 (extreme fatigue, restless nights, and need to rest during the day because of fibromyalgia and headaches); *id.* at 54 (lower back pain "all the time"); *id.* at 55 (on a "bad day," Whalen needs to lay down for six hours); *id.* at 58 (her ability to walk is limited to ten minutes before needing a fifteen-minute break); *id.* at 58-59 (can only sit for a half-hour in one position; can stand for five-minutes in one position). Moreover, where fibromyalgia is at issue, "a claimant's testimony, regarding her symptoms from the disorder, should be given increased importance in the ALJ's determination of whether the claimant is disabled." *Davidow v. Astrue*, No. 08-CV-6205T, 2009 WL 2876202, at *5 (W.D.N.Y. Sept. 2, 2009). Further, the vocational expert testified that four unscheduled absences a month would preclude "any form of competitive employment." Tr. 75. *See also id.* at 75-77 (employers might tolerate absences "once a month or three times in a quarter, but not [] back to back except in emergency situations"). Substantial evidence, therefore, does not support a finding that Whalen can operate in the workplace on a sustained basis.

This Court "will not reach the remaining issues raised by [Whalen] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach

14

arguments "devoted to the question of whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted).

## **CONCLUSION**

For these reasons, the Court GRANTS Whalen's motion for judgment on the pleadings (Dkt. 8) and DENIES the Commissioner's motion for judgment on the pleadings (Dkt. 11). The Commissioner's decision is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision and order. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: March 31, 2020
Buffalo, New York

    s/John L. Sinatra, Jr.
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE